## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 13-1668-LPS |
| AT&T MOBILITY LLC;<br>AT&T MOBILITY II LLC; and<br>NEW CINGULAR WIRELESS SERVICES, INC., | : | |
| Defendants. | : | REDACTED PUBLIC VERSION |
| and | : | |
| ERICSSON INC. and<br>TELEFONAKTIEBOLAGET LM ERICSSON | : | |
| Intervenors | : | |
| INTELLECTUAL VENTURES I LLC, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 13-1669-LPS |
| CRICKET COMMUNICATIONS, INC., | : | |
| Defendant. | : | |
| and | : | |
| ERICSSON INC. and<br>TELEFONAKTIEBOLAGET LM ERICSSON | : | |
| Intervenors | : | |

INTELLECTUAL VENTURES I LLC,

       Plaintiff,

       v.

NEXTEL OPERATIONS, INC. and
SPRINT SPECTRUM L.P.,

       Defendants.

and

ERICSSON INC. and
TELEFONAKTIEBOLAGET LM ERICSSON

       Intervenors

C.A. No. 13-1670-LPS

INTELLECTUAL VENTURES I LLC,

       Plaintiff,

       v.

T-MOBILE USA, INC. and T-MOBILE US, INC.

       Defendants.

and

ERICSSON INC. and
TELEFONAKTIEBOLAGET LM ERICSSON

       Intervenors

C.A. No. 13-1671-LPS

INTELLECTUAL VENTURES I LLC,                :

        Plaintiff,                            :

     v.                                          :          C.A. No. 13-1672-LPS

UNITED STATES CELLULAR CORPORATION, :

        Defendants.                           :

and                                                :

ERICSSON INC. and                             :
TELEFONAKTIEBOLAGET LM ERICSSON        :

        Intervenors                           :

---

## MEMORANDUM ORDER

Pending before the Court are: (i) Defendants' Motion to Strike Portions of Plaintiff Intellectual Ventures I's ("IV") Infringement Contentions for U.S. Patent Nos. 6,640,248 (the "'248 patent") and 5,602,831 (the "'831 patent") (C.A. No. 13-1668-LPS D.I. 439)[1] ("Motion to Strike Infringement Contentions"); (ii) Defendants' Motion to Strike Portions of the Expert Reports of Dr. Todd Moon with respect to claim 1 of the '248 patent (D.I. 477) ("Moon Motion"); (iii) Defendants' Motion for Leave to Amend their Prior Art List ("Motion to Amend") (D.I. 431); and (iv) letters from Defendants and IV discussing outstanding discovery disputes (D.I. 490; D.I. 495; D.I. 520).

Legal Standards

Infringement contentions are considered to be "initial disclosures" under Federal Rule of Civil Procedure 26(a). *See* United States District Court for the District of Delaware, *Default*

---

[1]Unless otherwise noted, all citations to the docket are to C.A. No. 13-1668-LPS.

*Standard for Discovery* § 4(a).  A failure to disclose under Rule 26(a) "may lead to [the] exclusion of the materials in question" under Rule 37(c)(1).  *Lambda Optical Solutions, LLC v. Alcatel-Lucent USA Inc.*, 2013 WL 1776104, at *2 (D. Del. Apr. 17, 2013).  In relevant part, Rule 37(c)(1) provides that "[i]f a party fails to provide information . . . as required by Rule 26(a) . . . , the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the [party's violation] was substantially justified or is harmless."

In determining whether a failure to disclose was substantially justified or harmless, and deciding whether to strike potentially critical evidence, courts consider the following factors: (1) the importance of the information withheld; (2) the prejudice or surprise to the party against whom the evidence is offered; (3) the likelihood of disruption of the trial; (4) the possibility of curing the prejudice; (5) the explanation for the failure to disclose; and (6) the presence of bad faith or willfulness in not disclosing the evidence (the "*Pennypack* factors").  *See Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir.1997) (citing *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir.1977)).  Exclusion of "critical evidence" is an "extreme sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence."  *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791-92 (3d Cir.1994) (internal quotation marks omitted).  The determination of whether to exclude evidence is committed to the discretion of the Court.  *See id.* at 749.

Motion to Strike Infringement Contentions

Defendants move to strike IV's final infringement contentions for the '248 patent, IV's doctrine of equivalents contentions for the '248 and '831 patents, and IV's new infringement

2

theory for the '831 patent.  (*See* D.I. 440 at 1-3)  The Court addresses each issue in turn.

Final Infringement Contentions for the '248 Patent

Defendants contend that the Court should strike IV's final infringement contentions for the '248 patent because IV's contentions "fail[] to address the latter part of the Court's construction" of the term "application-aware." (D.I. 440 at 1)  As IV recognizes, the Court's construction of "application-aware" includes two requirements: "(1) that the resource allocator have 'knowledge of the type of data application' and (2) that it 'take[] into account, when allocating bandwidth, information about applications at [the Open Systems Interworking Model] application layer 7.'" (D.I. 447 at 2 (quoting D.I. 378 at 15 (brackets in original)))  However, as Defendants point out, IV's final infringement contentions do not include the phrase "layer 7," but instead include IV's own "originally proposed . . . and expressly rejected . . . construction." (D.I. 440 at 1; *see also* D.I. 378 at 15)  In Defendants' view, "IV's refusal to apply the Court's construction [is] irrefutably prejudic[ial]" to Defendants, who "have had no notice . . . of how the accused products allegedly meet the application-aware limitation." (D.I. 440 at 1 (emphasis omitted))

IV responds that "Defendants are on adequate notice of IV's . . . literal infringement theory" because both IV's initial and final infringement contentions account for the Court's construction.  (D.I. 447 at 3)  IV further contends that Defendants had adequate notice of IV's literal infringement theory, since "to an engineer the words 'application layer' and 'layer 7' are synonymous." (*Id.*)

"Infringement contentions . . . serve the purpose of providing notice to the Defendants of infringement theories beyond the mere language of the patent claim." *Motion Games, LLC v.*

3

*Nintendo Co.*, 2015 WL 1774448, at *2 (E.D. Tex. Apr. 16, 2015); *see also Fujitsu Ltd. v. Tellabs Operations, Inc.*, 2012 WL 5444979 (N.D. Ill. Mar. 21, 2012) (same). Here, IV's final infringement contentions fail to provide Defendants adequate notice of "how the accused products allegedly meet the application-aware limitation," as IV's infringement contentions incorporate only the first part of the Court's construction. (D.I. 440 at 1) IV's omission of the latter half of the Court's construction – including the phrase "layer 7" – is problematic because, as the Court observed in its claim construction opinion, application-awareness requires both parts of the Court's construction. (*See* D.I. 462 at 1; *see also* D.I. 378 at 16 n.7) Moreover, during the Court's claim construction hearing, IV also agreed that claims 1 and 20 of the '248 patent required that "information about applications at layer 7 be accounted for." (D.I. 378 at 16 (internal quotation marks omitted)) IV's contentions appear, however, to be based on *IV's* proposed construction of "application-aware,"[2] which the Court rejected. (*See* D.I. 378 at 15-16)

IV's failure to serve infringement contentions that apply the Court's claim construction was neither substantially justified nor harmless. *See generally Phillips v AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005) ("[A] court should discount any expert testimony that is clearly at odds with the claim construction mandated by the claims themselves . . . .") (internal quotation marks omitted); *Kraft Food Group Brands LLC v. TC Heartland, LLC*, 2017 WL 134703, at *2

---

[2] IV proposed "plain and ordinary meaning" or "[a resource allocator at the MAC layer/a MAC layer] that allocates resources based on application type." (D.I. 378 at 15) The issue the Court confronted arose from IV's contention that while the resource allocator "must *have access to* layer 7 information," the allocator "*need not take that information into account* when allocating network resources." (*Id.* at 15-16) (emphasis added) Based on the discussion at the claim construction hearing, the Court understood that IV agreed that the allocator must take the layer 7 information into account when allocating network resources, and the Court's construction includes such a requirement. (*See id.* at 15)

4

(D. Del. Jan. 12, 2017) ("[E]xpert testimony that is inconsistent with the Court's claim construction is unreliable and unhelpful to the finder of fact . . . .").

The *Pennypack* factors support striking IV's contentions. While IV's contentions may be of critical importance – providing a basis for IV's infringement theory with respect to the '248 patent – they are legally deficient, as they fail to apply the Court's claim construction. Consequently, they severely prejudice Defendants, who "have . . . no notice . . . of how the accused products allegedly meet the application-aware limitation." (D.I. 440 at 1 (emphasis omitted)) As IV insists on adhering to a theory of infringement that is inconsistent with the Court's claim construction, there is no way to cure the prejudice to Defendants, despite the fact that five months remain before trial. While there is no evidence IV has acted in bad faith, its failure to provide contentions that account for the entirety of the Court's construction – even after IV conceded at the claim construction hearing that infringement requires awareness of level 7, and after the Court adopted Defendants' construction – is willful.

IV characterizes Defendants' motion as "a thinly-veiled summary judgment motion," adding that to grant it "would violate Rule 56 and IV's right to due process of law." (D.I. 447 at 1-2) The Court disagrees. Today's order does not grant summary judgment of non-infringement – instead, it strikes, as the Court must, legally deficient and untimely-served contentions. Whether this will lead to a grant of summary judgment is an issue not presently before the Court. Should a request for such relief be made, both sides will have notice and a full and fair opportunity to be heard before the Court determines if summary judgment should be granted. Furthermore, IV has long been on notice of the deadlines for service of infringement contentions and the Court's procedures for resolving disputes as to their adequacy and as to whether deficient

5

contentions should be stricken. (*See, e.g.,* D.I. 90 at ¶¶ 7(f) (setting deadline for providing final infringement contentions), 10 (motion to strike procedures))

Accordingly, Defendants' motion to strike IV's final infringement contentions with respect to the '248 patent is **GRANTED**.

Doctrine of Equivalents ("DOE") Contentions for the '248 and '831 Patents

Defendants argue that the Court should strike IV's DOE contentions for both the '248 and '831 patents because "IV has not . . . attempted to identify equivalents for each claim element as construed by the Court." (D.I. 440 at 2)  IV counters that its DOE theories for the '248 and '831 patents "provide[] sufficient notice" to Defendants. (D.I. 447 at 4 (internal punctuation omitted))

'248 Patent

With respect to the '248 patent, Defendants contend that "IV's contentions make no mention of the Court's construction [of the '248 patent] . . . and make no attempt to identify an equivalent for the 'application-aware' limitation." (D.I. 440 at 2)  IV counters that its DOE theory and literal infringement theory are "based on the same evidence" and its contentions with respect to both theories are adequate for the same reasons. (*See* D.I. 447 at 4 (emphasis omitted)) ("[B]ecause IV's literal infringement contentions are adequate (as discussed above), IV's DOE theory – which is based on the *same* evidence – is also adequate.")

The Court, however, has found IV's contentions with respect to literal infringement of the '248 patent to be inadequate.  As IV essentially relies on the asserted adequacy of its literal infringement contentions as the basis for the purported adequacy of its DOE contentions, it follows that the Court now finds IV's DOE contentions with respect to the '248 patent to be inadequate.

6

More particularly, to prove infringement through the doctrine of equivalents, "[a] patentee must establish equivalency on a limitation-by-limitation basis by . . . linking argument as to the insubstantiality of the differences between the claimed invention and the accused device or process." *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1342 (Fed. Cir. 2016) (internal quotation marks omitted). IV's DOE contentions fail to meet this standard. They do not "identify an equivalent for the 'application-aware' limitation" (D.I. 440 at 2) or explain "how the accused products perform the same function in substantially the same way to achieve substantially the same result" (D.I. 462 at 2).

For the reasons already given with respect to striking IV's contentions of literal infringement, the *Pennypack* factors further support striking IV's '248 patent contentions with respect to DOE. IV's DOE contentions are undoubtedly important to its infringement case, but their deficiency is highly prejudicial to Defendants, who lack notice of how their accused products purportedly infringe under the DOE. (*See* D.I. 378 at 15) IV's stance leaves no opportunity to cure this prejudice, regardless of how much time is left before trial.

Accordingly, Defendants' motion to strike IV's DOE contentions for the '248 patent is **GRANTED**.

### '831 Patent

With respect to the '831 patent, Defendants contend that "IV's DOE contentions . . . vitiate the Court's construction of the 'encoding' terms of claims 1 and 9 of the '831 patent, which require interleaving a discrete number of packets together into packet blocks." (D.I. 440 at 2; *see also* D.I. 378 at 7-8) Specifically, Defendants argue that "IV's DOE [contentions] do[] not even include an identification of the 'packets' required by the claims, never mind the requirement

7

of interleaving a discrete number of packets together." (D.I. 440 at 2)  Defendants further note that IV "fails to show" how its DOE contentions – in particular "segmenting transport blocks into one or more code blocks" and "encoding code blocks" (D.I. 440-2 Ex. 3 at 13) – are "equivalent to interleaving a discrete number of packets together."  (D.I. 440 at 2 (emphasis omitted))

IV responds that its contentions "clearly identify what it contends are 'packets' and how 'a discrete number' of those 'packets' are 'interleav[ed] . . . together.'" (*Id.* (brackets and ellipses in original); *see also* D.I. 440-2 Ex. 3 at 13 ("The accused eNBs perform the function in substantially the sa[m]e way, segmenting transport blocks into one or more code blocks, encoding code blocks which includes interleaving, and concatenating one or more encoded code block into a code word.  The result of a packet block including multiple interleaved packets is the same."))

The Court agrees with IV that its contentions provide adequate notice of its DOE theory, including by clearly identifying the packets required by the claims and by stating that those packets are interleaved together.  (*See* D.I. 447 at 4 ("[T]he accused 'eNBs perform the step of encoding packets into packet blocks by encoding transport blocks . . . that are comprised of packets . . . into blocks.'") (quoting D.I. 440-2 Ex. 3 at 7); D.I. 440-2 Ex. 3 at 13 ("The accused eNBs perform the same function in substantially the sa[m]e way, . . . encoding code blocks which includes interleaving.")) IV's infringement contentions also note that "encoding code blocks" (D.I. 440-2 Ex. 3 at 13) is equivalent to "interleaving" a discrete number of code blocks together (*id.*).  Thus, IV's contentions establish equivalency on a limitation-by-limitation basis, "linking . . . the insubstantiality of differences between the claimed invention and the accused device" and, as a result, provide sufficient notice of IV's DOE theory with respect to the '831 patent.

8

*Akzo Nobel Coatings, Inc.*, 811 F.3d at 1342.

Accordingly, Defendants' motion to strike IV's DOE contentions with respect to the '831 patent is **DENIED**.

### IV's Infringement Theory for the '831 Patent

Defendants ask the Court to strike IV's infringement theory for the '831 patent because "IV waited until two weeks before the close of fact discovery to disclose a new theory" for the term "signal drop-out characteristics." (D.I. 440 at 3) Although IV previously "identified . . . a single feature" – called the "channel quality indicator" – "as allegedly corresponding to" the term "signal drop-out characteristics," Defendants contend that IV did not identify its new theory – based on a value called a "NACK" – "as having any relevance to its infringement theory before its final [infringement] [c]ontentions." (*Id.* (emphasis omitted)) Defendants further contend that they "would be prejudiced if IV were allowed to pursue this new theory," as Defendants did not have an opportunity to "identif[y] prior art, develop[] their invalidity contentions, and [seek] discovery" based on the NACK technology. (*Id.*)

IV counters that its final infringement contentions were "timely" "served . . . in accordance with the parties' agreed-upon schedule" and that the reference to the NACK technology was "added in response to the Court's August 12, 2016 claim construction order." (D.I. 447 at 5) IV further argues that "Defendants cannot plausibly claim surprise" or prejudice because IV identified NACK technology in response to the Court's adoption of Defendants' claim construction proposal (*see* D.I. 378 at 6). (D.I. 447 at 5)

The Court agrees with IV that its infringement theory, which is contained in its timely-served infringement contentions, should not be stricken. While it appears IV had formulated its

9

NACK-based theory prior to August 2016, IV was appropriately pursuing discovery with respect

to that theory in the preceding months, and IV permissibly relied on the opportunity provided in

the scheduling order to finalize infringement contentions after the Court's claim construction

order.

IV's theory is plainly important to its case. The Court is unpersuaded by Defendants'

contention that they were unfairly prejudiced by the timing of disclosure of IV's theory.

Presumably Defendants had already conducted a prior art search consistent with *Defendants'*

proposed constructions, so the combination of the Court's adoption of those constructions and

IV's timely service of final contentions applying those constructions should not have constituted

a surprising, prejudicial occurrence for Defendants. There is no evidence of bad faith or even

willful disregard of a court order; to the contrary, IV has provided a reasonable explanation for its

failure to disclose its theory earlier. (*See id.*) (noting that IV amended its infringement

contentions in August, after deposing Ericsson's witness in July, the earliest date Ericsson's

witness was available) The *Pennypack* factors do not favor striking IV's infringement theory.

Accordingly, Defendants' motion to strike IV's infringement theory for the '831 patent is

**DENIED**.

Moon Motion

Defendants argue that the Court should strike portions of Dr. Moon's expert report

relating to claim 1 of the '248 patent because the report "attempt[s] to assert a new infringement

theory for the first time, after the deadline for final infringement contentions and [the] close of

fact discovery." (D.I. 478 at 1) Specifically, Defendants argue that the infringement charts

attached to Dr. Moon's report "are materially different from [IV's] final infringement contentions

10

. . . [and] reveal, among other things," IV's ▮▮▮ theory, "a previously-undisclosed theory for [the 'application aware' limitation of] [c]laim 1 of the '248 [p]atent." (*Id.*) Defendants further contend that IV's failure "to disclose this theory in its final contentions . . . led Defendants and Ericsson to believe that [IV] was not relying on the ▮▮▮ theory for its contentions for [c]laim 1." (*Id.* at 2)

IV counters that Dr. Moon's expert report was submitted in response to Defendants' failure "to provide substantive non-infringement contentions until the last day of fact discovery." (D.I. 481 at 1; *see also id.* at 3 ("Dr. Moon's opinion . . . is directly responsive to Defendants' last-minute non-infringement contentions.")) IV further contends that it previously identified the ▮▮▮ theory as corresponding to claim 2 of the '248 patent in its initial infringement contentions. (*See id.* at 2-3) As such, in IV's view, "Dr. Moon's opinion regarding [the] ▮▮▮ [theory] is not new" and, therefore, could not have prejudiced Defendants. (*Id.* at 4)

In their reply, Defendants do not dispute that IV's ▮▮▮ theory was disclosed in IV's initial infringement contentions, but explain that the disclosure was with respect to claim 2 – and not claim 1 – and that it was in connection with a "limitation . . . wholly unrelated to the 'application aware' limitation of [c]laim 1." (D.I. 488 at 1) Defendants also note that, in contrast to Dr. Moon's report, which "asserts that ▮▮▮ information is at Application Layer 7," "IV's initial contentions admit[ted] that ▮▮▮ information is not information at Application Layer 7." (*Id.* (emphasis omitted)) Thus, in Defendants' view, "Dr. Moon's theory is wholly new" and should be excluded. (*Id.*) Finally, Defendants contend that their non-infringement contentions were "timely served," "consistent with the [s]cheduling [o]rder." (*Id.* at 1-2)

The Court agrees with Defendants that portions of Dr. Moon's report violate the Court's

11

scheduling order, as they injected a new infringement theory into the case on October 26, 2016,

two months after IV was required to disclose its final infringement contentions (and two months

after the close of fact discovery).  (*See* D.I. 360 at 6)  The infringement theory *is new* with

respect to claim 1, even though the ▮▮▮ had been identified by IV previously as satisfying a

claim limitation contained in claim 2.

On balance, the *Pennypack* factors favor exclusion of the portions of Dr. Moon's report

that relate to IV's untimely infringement theory.  While the challenged portions of Dr. Moon's

report are important, as they go to IV's attempt to prove infringement of claim 1 of the '248

patent, they have prejudiced Defendants, who were "unable to conduct a proper fact investigation

and secure rebuttal evidence" specific to claim 1 and the "application aware" limitation during

fact discovery.  (D.I. 478 at 2)  It may be that the unfair prejudice to Defendants could be cured in

the months ahead without disrupting the July 2017 trial – perhaps by permitting an additional

expert report from Defendants and additional expert discovery – and the Court does not find that

IV acted in bad faith.  Yet IV does not provide a convincing explanation for the timing of the

disclosure of its new theory of infringement, particularly given that IV has always had the burden

of proving infringement (rendering unpersuasive IV's attempt to place the blame on *Defendants*

for their *timely* service of non-infringement contentions)[3] and given the self-evident fact that IV

has been well aware of the ▮▮▮ signal since its initial infringement contentions (rendering its

failure to cite ▮▮▮ in connection with claim 1 an implicit indication that even IV did not believe

▮▮▮ was pertinent to analysis of infringement of claim 1)).  Additionally, given the conclusions

---

[3]While IV now insists it "had good cause to supplement" its infringement contentions as
late as service of the Moon Report (D.I. 481 at 3), it never sought leave to do so.  Nor, even now,
has it demonstrated such good cause, for the reasons explained above.

the Court has reached above in connection with other issues relating to theories of infringement of the '248 patent, the Court concludes that IV's "shifting sands" approach to infringement of this patent has reached the point at which the Court must grant Defendants the relief sought in the Moon Motion. *See generally Keranos, LLC v. Silicon Storage Technology, Inc.*, 797 F.3d 1025, 1034-35 (Fed. Cir. 2015) (noting district courts' efforts to require parties to "crystallize their theories of the case early in the litigation so as to prevent the shifting sands approach to claim construction") (internal quotation marks omitted).

Accordingly, Defendants' Moon Motion is **GRANTED**.

Motion to Amend

Defendants' Motion to Amend sought leave to amend their final identification of prior art to add a prior art system Defendants had not previously asserted against U.S. Patent No. 6,952,408 (the "'408 patent"). (D.I. 431) Following conclusion of briefing on the Motion to Amend, the parties filed a Stipulation Regarding Narrowing of Issues between Plaintiff Intellectual Ventures I LLC and Defendants (D.I. 485), which the Court so ordered on December 8, 2016. As IV has withdrawn its allegations of infringement of the '408 patent (*see id.*), and Defendants' counterclaims directed to the '408 patent have been dismissed without prejudice (*see id.*), it is unnecessary to determine which prior art should be permitted to be asserted against the '408 patent. (*See also generally* D.I. 495 ("[T]his case now involves only two patents – U.S. Patent Nos. 6,640,248 and 5,602,831. . . ."); D.I. 500 (joint status report stating same))

Accordingly, Defendants' Motion to Amend (D.I. 431) is **DENIED AS MOOT**.

Discovery Disputes

In response to an oral order issued by the Court (D.I. 484), Defendants submitted a letter

13

discussing three outstanding discovery disputes on December 9, 2016 (Defendants' "initial letter") (D.I. 490), and on December 13, IV filed a letter responding to the issues raised in Defendants' initial letter (D.I. 495). The parties submitted additional, related letters in connection with Defendants' Motion for Leave to File a Reply Letter to Plaintiff's December 13 Letter (D.I. 497), which the Court **HEREBY GRANTS**, as it has considered all of the letters in determining how to proceed. (*See* D.I. 497-1, 498) Defendants submitted another letter on January 31, 2017, updating the Court on the status of the discovery matters raised in their initial letter. (D.I. 520)

Having reviewed these letters, **IT IS HEREBY ORDERED** that the parties shall brief the discovery disputes identified in Defendants' January 31, 2017 letter (D.I. 520) on the following schedule: (i) Defendants shall submit an opening letter, no longer than three pages, due Thursday, February 16; and (ii) IV shall submit an answering letter, no longer than three pages, due Friday, February 17. The Court will hear argument during a teleconference on Tuesday, February 21, beginning at 2:00 p.m. Counsel for IV shall initiate the call.

Redactions

Because this Memorandum Order has been filed under seal, the parties shall meet and confer and, no later than February 15, 2017, submit a proposed redacted version of it. Thereafter, the Court will issue a publicly-available verison.

February 14, 2017
Wilmington, Delaware

HON. LEONARD P. STARK
UNITED STATES DISTRICT COURT

14