IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTELLECTUAL VENTURES I LLC, | : |
| Plaintiff, | : |
| v. | : C.A. No. 13-1670-LPS |
| NEXTEL OPERATIONS, INC. and SPRINT SPECTRUM L.P., | : |
| Defendants. | : |
| and | : **REDACTED PUBLIC VERSION** |
| ERICSSON INC. and TELEFONAKTIEBOLAGET LM ERICSSON | : |
| Intervenors | : |
| INTELLECTUAL VENTURES I LLC, | : |
| Plaintiff, | : |
| v. | : C.A. No. 13-1671-LPS |
| T-MOBILE USA, INC. and T-MOBILE US, INC. | : |
| Defendants. | : |
| and | : |
| ERICSSON INC. and TELEFONAKTIEBOLAGET LM ERICSSON | : |
| Intervenors | : |

INTELLECTUAL VENTURES I LLC, :
:
    Plaintiff, :
:
v. : C.A. No. 13-1672-LPS
:
UNITED STATES CELLULAR CORPORATION, :
:
    Defendants. :
:
and :
:
ERICSSON INC. and :
TELEFONAKTIEBOLAGET LM ERICSSON :
:
    Intervenors :

Brian E. Farnan, Michael J. Farnan, FARNAN LLP, Wilmington, DE
Martin J. Black, DECHERT LLP, Philadelphia, PA
Justin F. Boyce, DECHERT LLP, Mountain View, CA
Jeffrey B. Plies, DECHERT LLP, Austin, TX

   Attorneys for Plaintiffs Intellectual Ventures I LLC.


Jack B. Blumenfeld, Karen Jacobs, Jennifer Ying, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE
Douglas M. Kubehl, Joseph D. Gray, Jeffery S. Becker, Johnson K. Kuncheria, Steven T. Jugle, Harrison G. Rich, Megan V. LaDriere, Jonathan Rubenstein, BAKER BOTTS LLP, Dallas, TX

   Attorneys for Defendants T-Mobile USA, Inc., T-Mobile US, Inc., U.S. Cellular Corp., and Intervenors Ericsson Inc. and Telefonaktiebolaget LM Ericsson


Jack B. Blumenfeld, Karen Jacobs, Jennifer Ying, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE
Asim M. Bhansali, David J. Silbert, R. Adam Lauridsen, Justina K. Sessions, KEKER, VAN NEST & PETERS LLP, San Francisco, CA

   Attorneys for Defendants T-Mobile USA, Inc., T-Mobile US, Inc.


Jack B. Blumenfeld, Karen Jacobs, Jennifer Ying, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE
David E. Finkelson, Kristen M. Calleja, MCGUIRE WOODS LLP, Richmond, VA
Franklin D. Kang, MCGUIRE WOODS LLP, Los Angeles, CA

   Attorneys for Defendants Sprint Spectrum LP and Nextel Operations Inc.

---

**MEMORANDUM OPINION**

May 19, 2017
Wilmington, Delaware

*[signature]*

STARK, U.S. District Judge:

Pending before the Court are: (i) Plaintiff Intellectual Ventures I's ("Plaintiff" or "IV") motion for reconsideration (C.A. No. 13-1670-LPS D.I. 570)[1] of the Court's February 14, 2017 Memorandum Order granting in part and denying in part Defendants' motions to strike (D.I. 527) ("IV Motion"), and (ii) Defendants Nextel Operations Inc. ("Nextel"); Sprint Spectrum L.P. ("Sprint"); T-Mobile USA, Inc. ("T-Mobile USA") and T-Mobile US, Inc. ("T-Mobile US," and collectively with T-Mobile USA, "T-Mobile"); United States Cellular Corporation ("U.S. Cellular"); Intervenors Ericsson Inc. and Telefonaktiebolaget LM Ericsson's (collectively, with Ericsson Inc., "Ericsson," and collectively with Nextel, Sprint, T-Mobile, and U.S. Cellular, "Defendants") motion for summary judgment of non-infringement as to all asserted claims of U.S. Patent No. 6,640,248 (the "'248 patent") (D.I. 542 at 2-8) ("Summary Judgment Motion").[2]

For the reasons set forth below, the Court will deny the IV Motion and will grant Defendants' Summary Judgment Motion.

I.  **BACKGROUND**

IV filed suit against Defendants on October 7, 2013, alleging infringement of twelve patents. (*See* D.I. 542 at 1) IV's infringement allegations have since been reduced to seven claims across two patents: the '248 patent and U.S. Patent No. 5,602,831 (the "'831 patent"). (*See id.*) IV asserts five claims of the '248 patent against T-Mobile and U.S. Cellular and two claims of the '831 patent against all Defendants. (*See* D.I. 582 at 2; *see also* D.I. 542 at 5 n.6,

---

[1]Unless otherwise noted, all citations to the docket are to C.A. No. 13-1670-LPS.

[2]The Court will address the remainder of the issues presented in Defendants' Summary Judgment Motion at a later time, in one or more separate opinions and/or orders.

1

10) IV accuses Defendants of infringing both patents-in-suit "based on [Defendants'] deployment of Ericsson's and/or Alcatel-Lucent's LTE base-stations." (D.I. 542 at 1)

The '248 patent "discloses a resource allocator . . . that allocates resources for communication on . . . packet-switched network[s]," "allow[ing] various types of traffic (e.g., voice, data, and video) to share available bandwidth." (D.I. 582 at 4-5) The '831 patent "discloses methods and systems for transporting packet blocks of variable size according to changes in signal-dropout characteristics" (*id.* at 16) – "a portion of a signal that has a substantial loss in signal strength" (D.I. 542 at 10) (internal quotation marks omitted). "The solution disclosed in the '831 patent enables transmitters to adjust the size of packet blocks in response to . . . signal dropouts," with the transmitter reducing packet-block size "as signal dropouts become more severe." (D.I. 582 at 17)

The Court issued a claim construction opinion on August 12, 2016 (D.I. 376) and IV served its final infringement contentions on August 26, 2016 (D.I. 355). Fact and expert discovery closed on September 16, 2016 and February 3, 2017, respectively. (*Id.*) Before the close of expert discovery, Defendants filed two motions to strike. First, on October 6, 2016, Defendants moved to strike IV's final infringement contentions for the '248 and '831 patents. (D.I. 439) ("Infringement Motion") Second, on November 16, 2016, Defendants moved to strike portions of Dr. Todd Moon's expert report. (D.I. 480) ("Moon Motion") By Memorandum Order on February 14, 2017, the Court granted the Infringement Motion with respect to the '248 patent and denied it with respect to the '831 patent, and granted the Moon Motion. (D.I. 527 at 6-7, 9-10, 13)

IV moved for reconsideration of the Court's Memorandum Order on March 7, 2017.

(D.I. 570) Earlier, on February 22, 2017, Defendants had filed their Summary Judgment Motion. (D.I. 542 at 2-8) The parties completed briefing on the IV Motion on March 28, 2017 (D.I. 570, 585) and on Defendants' Summary Judgment Motion on April 4, 2017 (D.I. 542, 582, 594).

The Court heard oral argument on April 25, 2017. (D.I. 609 ("Tr.")) At oral argument, both sides acknowledged that the IV Motion presented "the same arguments" as IV's brief in opposition to Defendants' Summary Judgment Motion. (Tr. at 9, 13)

## II. LEGAL STANDARDS

### A. Motion for Reconsideration

Pursuant to Local Rule 7.1.5, motions for reconsideration should be granted only "sparingly." The decision to grant such a motion lies squarely within the discretion of the district court. *See Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 42 F. Supp. 2d 385, 419 (D. Del. 1999); *Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1241 (D. Del. 1990). These types of motions are granted only if the Court has patently misunderstood a party, made a decision outside the adversarial issues presented by the parties, or made an error not of reasoning but of apprehension. *See Shering Corp. v. Amgen, Inc.*, 25 F. Supp. 2d 293, 295 (D. Del. 1998); *Brambles*, 735 F. Supp. at 1241. "A motion for reconsideration is not properly grounded on a request that a court rethink a decision already made." *Smith v. Meyers*, 2009 WL 5195928, at *1 (D. Del. Dec. 30, 2009); *see also Glendon Energy Co. v. Borough of Glendon*, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993). It is not an opportunity to "accomplish repetition of arguments that were or should have been presented to the court previously." *Karr v. Castle*, 768 F. Supp. 1087, 1093 (D. Del. 1991).

A motion for reconsideration may generally be granted only if the movant can show at least one of the following: (i) there has been an intervening change in controlling law; (ii) the

availability of new evidence not available when the court made its decision; or (iii) there is a need to correct a clear error of law or fact to prevent manifest injustice. *See Max's Seafood Café by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). However, in no instance should reconsideration be granted if it would not result in amendment of an order. *See Schering Corp.*, 25 F. Supp. 2d at 295.

### B. Summary Judgment

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252.

### III. DISCUSSION

#### A. IV's Motion for Reconsideration

IV seeks reconsideration of the Court's February 14, 2017 Memorandum Order granting (i) Defendants' motion to strike IV's infringement contentions for the '248 patent and (ii) Defendants' motion to strike portions of Dr. Moon's expert report. (*See* D.I. 570 at 1) The

Court addresses both parts of the IV Motion below.

### 1. Motion to Strike IV's Infringement Contentions for the '248 Patent

The Court's decision to strike IV's infringement contentions for the '248 patent "rest[s] on the finding that IV . . . disregarded the [Court's] construction of [the term] 'application aware.'"[3] (D.I. 570 at 1; *see also* D.I. 527 at 4 (stating that "IV[] fail[ed] to serve infringement contentions that apply the Court's claim construction")) IV seeks reconsideration of the Court's decision based on its insistence that it "faithfully applied the wording of the [Court's] claim construction" and its view that the parties have "a legitimate dispute . . . regarding the meaning of the construction." (D.I. 570 at 1) In this context, IV contends "it would work a manifest injustice to uphold the finding that IV . . . violated the Court's construction." (*Id.* at 6)

As IV recognizes, the Court's construction of the term "application aware" includes two requirements: (1) that the resource allocator have "knowledge of the type of data application" and (2) that it "take[] into account, when allocating bandwidth, information about applications at [the Open Systems Interworking ("OSI") Model] application layer 7." (*Id.* at 1) According to IV, the parties dispute the interpretation of the second part of the Court's construction: in IV's view, "information about applications at . . . layer 7" may include information "obtained . . . indirectly from . . . layers 3 and 4," while in Defendants' view, layer 7 information includes only "information . . . obtained directly from layer 7."[4] (*Id.* at 4; *see also* Tr. at 10) IV further argues that the parties' claim construction dispute centers on the prosecution history of the '248 patent:

---

[3]The "application-aware" limitation appears in claim 1 of the '248 patent. (*See* D.I. 542 at 5 n.6)

[4]"[L]ayers 5 and 6 do not exist" in the pertinent OSI model. (D.I. 542 at 3 n.4; *see also* Tr. at 29)

6

while Defendants claim that layers 3 and 4 are "excluded from the Court's construction . . . based on remarks made in the file history of the '248 patent," IV counters that those remarks "were not discussed in the . . . claim construction brief[ing ,] . . . during the Markman hearing, [or] . . . in the claim construction opinion." (*Id.* at 7)

Defendants respond that the precise claim construction dispute identified in IV's motion was "squarely addressed" in the parties' claim construction briefs and then "conclusively resolved" against IV in the Court's claim construction opinion. (D.I. 585 at 1; *see also id.* at 3 (noting that, in its claim construction briefing, "IV . . . state[d] that the dispute was 'whether knowledge of application type must come directly from layer 7'") (quoting D.I. 208 at 118; emphasis omitted)) Specifically, Defendants contend that, during claim construction, IV "repeatedly acknowledged that Defendants' construction requires taking into account information from OSI layer 7, . . . not merely using information 'about applications' obtained from other layers." (*Id.* at 1) (emphasis omitted) Defendants further observe that IV argued during claim construction "exactly as it does here – that information 'about applications' is enough to satisfy the 'application aware' limitation, even if [the information] does not come from layer 7." (*Id.* at 7) As Defendants see it, the Court "rejected [IV's] arguments" and, instead, adopted Defendants' construction based on "statements from the prosecution history." (*Id.* at 7-8) Thus, in Defendants' view, "there is no clear error [of law or fact]" that could support IV's motion for reconsideration. (*Id.* at 8)

The Court agrees with Defendants. As Defendants explain, the alleged ambiguity identified in IV's motion – "whether 'application aware' requires taking into account information from layer 7 . . . – was ***the key dispute*** between the parties [at claim construction] . . . and [was

the] subject of significant discussion, most of which came from IV's own briefs." (*Id.* at 7) (emphasis added) For example, IV's briefing "acknowledged . . . that Defendants' construction requires that the 'information' come 'from layer 7.'" (*Id.*; *see also* D.I. 208 at 118 ("The question is not whether the claimed 'resource allocator' . . . must have knowledge from application layer 7. . . , but rather, whether knowledge of application type must come directly from layer 7.")) IV's claim construction brief advanced the same construction as the pending IV Motion. (*See* D.I. 208 at 118) ("[T]he resource allocator need not glean application type information directly from layer 7.") (emphasis omitted) Moreover, IV's briefing referred to and discussed the prosecution history of the '248 patent. (*See id.*) (arguing that "[c]ontrary to Defendants' reading of the file wrapper, Applicant did not argue that the invention requires 'information about applications' to be accessed directly from layer 7")

In the face of these contentions, the Court rejected IV's position. The Court adopted Defendants' construction, which it found to be supported by the patentee's statements during prosecution. (*See* D.I. 376 at 15-16, 16 n.7 ("Defendants' position is also supported by the prosecution history, during which the patentee distinguished [the] invention from prior art based on the fact that . . . the resource allocator must be able to take into account . . . information *at . . . layer 7.*") (emphasis added; internal quotation marks omitted); Tr. at 36 (noting that Defendants' construction is "the only one that makes sense with the prosecution history")) Thus, "all the evidence and argument . . . [in IV's Motion] was already before the Court long before it struck IV's infringement theories." (D.I. 585 at 2) (internal quotation marks omitted)

IV argues that Defendants' expert, Dr. Thomas Fuja, pointed to new evidence – an excerpt of the file history – "that was 'not discussed in the . . . claim construction brief[ing,] . . .

8

during the Markman hearing, . . . [or] in the claim construction opinion.'" (*Id.* at 8) (quoting D.I. 570 at 7) In IV's view, the evidence that Dr. Fuja cites supports reconsideration. (*See* D.I. 570 at 7-8) The Court disagrees. As Defendants explain, the excerpts of the file history cited by Dr. Fuja were discussed and cited in Defendants' claim construction briefing, *IV's* claim construction briefing, and the Court's claim construction opinion. (*See* D.I. 585 at 9)

IV next contends that reconsideration is warranted because Dr. Fuja "admitted that the file history is ambiguous." (D.I. 570 at 8) According to IV, Dr. Fuja's admission "shows . . . that there is a genuine claim construction dispute" between the parties. (*Id.*) Again, the Court disagrees. Dr. Fuja did not admit that the file history was ambiguous. Instead, "Dr. Fuja explained that there could be ambiguity if one looked only at two sentences from the file history, but that any ambiguity is resolved when the entire context is considered." (D.I. 585 at 9 n.10 (internal quotation marks and emphasis omitted); *see also* D.I. 585-1 Ex. 7 at 167 ("[The patentee] claim[s] a resource allocator that uses information about an application by looking above layer 4 – it does not then say, alternatively, one could gain such information by looking at layer 3 or 4."))

Finally, IV argues that reconsideration is appropriate because Defendants have not identified any prejudice or confusion "caused by IV's failure to specifically use the words 'layer 7.'" (D.I. 570 at 9) But Defendants did identify such prejudice – both in their motion to strike and in their opposition to IV's motion for reconsideration. In their motion to strike, Defendants observed that IV's theory was inconsistent with the Court's claim construction and, thus, gave Defendants "no notice . . . of how the accused products allegedly meet the application-aware limitation." (D.I. 440 at 1) (emphasis omitted) In their brief in opposition to IV's motion for

9

reconsideration, Defendants further note that the prejudice they previously identified "has only multiplied, because Defendants have since filed an opening brief for summary judgment and IV has filed a response requesting that the Court allow IV to reopen discovery to pursue a new infringement theory." (D.I. 585 at 9; *see also id.* at 10 n.13 ("The fact that Defendants served responsive expert reports does not eliminate . . . the additional prejudice of having to relitigate these already-decided issues in the middle of summary judgment briefing, particularly when Defendants have already served opening briefs."))

Accordingly, the Court will deny IV's Motion with respect to the Infringement Motion.

### 2. Moon Motion

The Court granted Defendants' Moon Motion because IV advanced an infringement theory that was "new with respect to claim 1" of the '248 patent, "two months after IV was required to disclose its final infringement contentions . . . and two months after the close of fact discovery." (D.I. 527 at 12) (emphasis omitted) IV moves for reconsideration of the Court's decision based on its insistence that its "new theory" – the ▉ theory – had actually been previously disclosed in its initial infringement contentions. (*See* D.I. 570 at 9-10) IV argues that its previous disclosure of the ▉ theory "naturally conveyed that the ▉ . . . falls within the broader scope of the 'information about applications . . . at layer 7.'" (*Id.* at 10) (second ellipses in original)

IV's argument, however, is belied by IV's initial infringement contentions, which "admit[ted] that ▉ information is not information at Application Layer 7." (D.I. 491 at 1) (emphasis omitted) Moreover, IV's disclosure of its ▉ theory "was in connection with a 'limitation [in dependent claim 2] . . . wholly unrelated to the 'application aware' limitation of

10

[c]laim 1.'" (D.I. 527 at 11 (quoting D.I. 491 at 1; second alteration and ellipses in original); *see also* D.I. 585 at 10 (noting that "[t]he Court already rejected [IV's] argument" that "IV's disclosure of ▇ in dependent claim 2 was also as to claim 1")) Therefore, IV has failed to persuade the Court that reconsideration of the Moon Motion is appropriate.

Accordingly, the Court will deny IV's Motion with respect to the Moon Motion.

### B. Defendants' Summary Judgment Motion

Defendants seek summary judgment of non-infringement of the asserted claims of the '248 patent. (*See* D.I. 542 at 2-8) In support of their motion, Defendants note that both of IV's infringement theories for claim 1 of the '248 patent "ha[ve] been stricken as insufficient to satisfy the Court's construction of 'application[]aware.'"[5] (*Id.* at 5; *see also* D.I. 527 at 6-7, 13 (striking IV's theories)) Because IV has "no operative infringement theories" for the '248 patent,[6] "IV cannot meet its burden of proving – literally or under the DOE – that the accused systems include an 'application[-]aware' resource allocator as required by [the] asserted claims." (D.I. 542 at 8)

IV opposes Defendants' motion, presenting essentially the same arguments pressed in its motion for reconsideration. (*See* D.I. 582 at 5-7, 13) Specifically, IV argues that there is "a

---

[5]The "application-aware" limitation appears in independent claim 1 of the '248 patent. (*See* D.I. 542 at 5 n.6) The remaining asserted claims of the '248 patent are claims 2, 5, 9, and 14, all of which depend from claim 1. (*See id.*) Therefore, "[t]he application-aware limitation . . . affects all of the remaining asserted claims." (*Id.*)

[6]IV asserted two infringement theories with respect to claim 1 of the '248 patent: (1) the ▇ theory, found in IV's final infringement contentions, and (2) the ▇ theory, found in Dr. Moon's expert report. (*See* D.I. 542 at 5-6) (discussing each respective theory) The Court struck both theories in its February 14, 2017 Memorandum Order granting in part and denying in part Defendants' motions to strike. (*See* D.I. 527 at 6-7 (striking ▇ theory); *id.* at 13 (striking ▇ theory))

11

factual dispute about how to apply the [Court's] construction" (*id.* at 8): while Defendants view "the Court's construction [as] limit[ing] infringement to . . . a resource allocator [that] receives information directly from layer 7," IV contends that "no mention of 'direct' appears in the construction" and that the "natural reading of the construction [allows for] . . . the pertinent information [to] be derived indirectly from layer[s] 3 or 4 . . . or directly from layer 7" (*id.* at 3-4, 6; *see also* Tr. at 16). IV explains that both its final infringement contentions and Dr. Moon's expert report applied "the plain language of the Court's [c]onstruction."[7] (D.I. 582 at 8-9) In contrast, IV argues, Defendants' experts improperly rely on the prosecution history, not the Court's construction. (*See id.* at 6-7) ("Experts are not empowered to reach into the file history and argue prosecution history estoppel to the jury.")

The Court concludes that there is no genuine dispute that Defendants' accused products do not infringe the asserted claims of the '248 patent. IV's opposition to summary judgment depends entirely on a claim construction position the Court has rejected. *See supra* Discussion III.A.1. As such, contrary to IV's assertions, there is no new "claim construction dispute" to resolve at this stage of the case. (D.I. 582 at 13) Accordingly, summary judgment of non-

---

[7]In its brief in opposition to Defendants' Summary Judgment Motion, IV also relies on its stricken infringement theories to argue that the accused products meet the limitations of claim 1. (*See* D.I. 582 at 9-12) For purposes of deciding Defendants' motion for summary judgment, the Court will not consider those theories because "IV cannot . . . rely on its stricken theories to attempt to raise a genuine issue of material fact." (D.I. 594 at 2; *see also* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion . . . , unless the failure was substantially justified or is harmless."); D.I. 527 at 4, 12 (finding that "IV's failure to serve infringement contentions that apply the Court's claim construction" and "IV's untimely infringement theory" in Dr. Moon's expert report were "neither substantially justified nor harmless"))

12

infringement is warranted.[8]

IV contends it should be "permit[ted] . . . to proceed to trial on [Dr. Moon's ▮▮▮ theory for claim 2, even if the Court grants summary judgment with respect to claim 1." (*Id.* at 13 n.5) The Court disagrees. As stated above, the "application-aware" limitation of claim 1 "affects all of the remaining asserted claims" of the '248 patent, because the remaining asserted claims depend on claim 1. (D.I. 542 at 5 n.6) Hence, "summary judgment of non-infringement of [independent] claim 1 necessarily requires summary judgment of non-infringement of [dependent] claim 2." (D.I. 594 at 3 n.3; *see also Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1299 (Fed. Cir. 2002) ("[D]ependent claims cannot be infringed unless the independent claims from which they depend are infringed."))

Finally, IV contends that "[i]f the Court decides to revise its construction of the term 'application aware,' . . . then IV should be afforded an opportunity pursuant to Rule 56(d) to propound additional discovery and Dr. Moon should be allowed to supplement his infringement reports." (D.I. 582 at 14 n.6) This contention is moot, as the Court is ***not*** revising its construction of the term "application aware." Furthermore, IV has had ample opportunity to pursue discovery and present infringement contentions in accordance with the Court's claim construction. (*See* D.I. 527 at 5-6; *see also* D.I. 594 at 4 ("IV has long known Defendants' claim construction position, which was adopted by the Court."))

Accordingly, the Court will grant Defendants' motion.

---

[8]Defendants also move for summary judgment of non-infringement of the '248 patent under the doctrine of equivalents. (*See* D.I. 542 at 6) The Court agrees with Defendants that IV does not raise any "genuine disputes as to [its] '248 [p]atent DOE infringement allegations." (D.I. 594 at 2 n.2) As such, the Court's grant of summary judgment includes non-infringement under the DOE.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny IV's motion for reconsideration and will grant Defendants' motion for summary judgment of non-infringement of the '248 patent. An appropriate Order follows.